IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 4:25mj51/MAF |
| v. | **UNDER SEAL** |
| JEVAN ANTONIO MILLER | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Colin Mahoney, being duly sworn, depose and state the following:

## I. INTRODUCTION

1. I am a duly appointed Special Agent of the Department of Homeland Security (DHS), Immigration Customs Enforcement (ICE), Homeland Security Investigations (HSI), with authority to investigate federal offenses pursuant to Titles 8, 18, 19, and 21 of the United States Code. I have been employed as Special Agent with HSI since March of 2023. Prior to this, I served with the United States Forest Service as K-9 Law Enforcement Officer and then a Patrol Captain from 2008 to 2023. Prior to that I worked as a police officer in Ocean City, Maryland from 2001 to 2005. I also served with the United States Coast Guard doing maritime law enforcement from 1995 to 2000. I graduated from the Federal Law Enforcement Training Center (FLETC) located in Brunswick, Georgia and subsequently completed the Criminal Investigator Training Program (CITP) and the Homeland Security Investigations Special Agent Training (HSISAT). I have over 26 years of

law enforcement experience. I have successfully completed five law enforcement academy training programs: U.S. Coast Guard Basic Training, the Ocean City Police Academy, Land Management Police Training (LMPT), CITP, and HSI-SAT.

2. I have received training in various criminal investigative techniques involving financial investigations, drug investigations, the execution of search warrants, and other methods related to criminal investigations. I have been trained in the laws and regulations related to various federal criminal offenses, including but not limited to narcotics smuggling, money laundering, fraud, bulk cash smuggling, and child exploitation. I have initiated or otherwise participated in criminal investigations related to those violations and am familiar with methods and techniques utilized by those committing narcotics smuggling, human smuggling, child exploitation and other violations of federal law.

3. This affidavit, made in support of a criminal complaint charging Jevan Antonio Miller (DOB: 11/29/1996), hereinafter "MILLER", contains evidence of coercion and enticement, in violation of Title 18, United States Code, Section 2422(b).

4. The facts in this affidavit come from my review of the facts of this case from reading the reports of investigation, my training and experience, and information obtained from other agents/investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.   FACTS ESTABLISHING PROBABLE CAUSE

5.   Between April 10, 2025 and April 12, 2025, detectives of the Tallahassee Police Department Special Victims Unit, along with HSI and the Leon County Sheriff's Office, participated in an undercover operation in Leon County focused on identifying individuals using the Internet to exploit children in a sexual manner. During the course of this operation, Detective Hinds was acting in an undercover capacity utilizing a persona of a female child who had not attained the age of 16 (hereinafter "UC").

6.   UC was contacted by MILLER on April 11, 2025, after she posted an ad on a website known for online solicitation of people looking for someone to hang out with or for the solicitation of escorts. MILLER reached out to UC via text messaging.

7.   On April 11, 2025, the UC "chatted" with MILLER. The following is a portion of their conversation:

- MILLER: You available
- UC: yeah, wat u want
- MILLER: Qv
- UC – how much you gonna pay me
- MILLER: How much you want
- MILLER: You real btw?
- UC: I aint got time to play. Name ur price
- UC: Im real. Younger than the ad tho if ur down
- MILLER: 80?
- MILLER: How old r you
- UC – 15
- UC – Make it 100
- MILLER: Nah you might be a cop

3

- UC – Wtf I aint no cop
- MILLER – Mhm
- UC – U r waistin my time
- MILLER – Send a pic
- UC – K bye
- MILLER – K
- UC – u real or fake
- MILLER - Am Real
- UC – Prove it
- MILLER – sends photograph
- UC – That u for real
- MILLER – Ya
- MILLER – you sure you real and not a cop
- UC – I told you already
- UC – I aint got time to mess around and I aint no cop
- MILLER – ok
- UC – Where u at
- MILLER – I cant come to you?
- UC – U can come to me if u want
- MILLER – ok way
- UC – bb is extra
- UC – U bringing a condom
- MILLER – Yes

8. It should be noted "Qv" is another term for quick visit or quick sex, and "bb" is an abbreviation for "bareback" or "bareback sex," which is physical sexual activity, especially sexual penetration, without the use of a condom. MILLER asked for the address and advised that he was on the way. During the conversation, MILLER asked for an additional photo and UC sent him another photo. After a short while, UC asked MILLER for a photo to which he replied that he was driving. He was given the address of the meeting location.

9. While on the way, MILLER contacted UC twice by phone where he confirmed that he had money for the interaction and confirmed with the UC that he

4

was on his way. MILLER had originally sent UC a photo of himself. MILLER arrived at the location in a white 2014 BMW bearing South Carolina license plate 314AGC.

10. The vehicle drove past the meeting location twice while MILLER texted UC, "You gonna come outside" and "Come outside." MILLER called UC a third time and confirmed that he was driving the white vehicle outside.

11. When MILLER asked UC if she was going to come out of the house, UC replied to the effect of "yes, if you stop driving around so much." At that point, UC believed MILLER suspected that law enforcement was involved as MILLER drove away from the target location at a high rate of speed. A chase ensued during which a vehicle pin was performed on MILLER's vehicle by members of the Tallahassee Police Department, and MILLER was apprehended.

12. A search incident to arrest revealed that MILLER had $125.00 in U.S. currency, a hotel room key, and one magnum condom on his person.

13. Officer Carter transported MILLER to an off-site interview location. Detective Hinds conducted the post-arrest interview, where he was read his *Miranda* warnings. MILLER initially waived his rights and advised the following:

   a. He met UC on a website he could not recall the name of. MILLER admitted to utilizing his safari browser on his cell phone to access the website.

   b. He was only meeting UC to "Chill". He denied any mention of sexual services or exchange of money with UC. MILLER was confronted with

5

knowledge of the chats with UC at which time he stated he believed the conversation to be "not real".

c. He admitted to bringing over $100.00 in cash which he had taken out of his bank account earlier the same day. MILLER denied pulling out money to pay UC but instead took money out to buy food. When questioned why he would need over $100.00 in cash to buy food, MILLER was unable to explain his reasoning.

d. He stated this was the first time he has attempted to meet with anyone off the website. MILLER also stated he has never had a sexual encounter with a minor.

14. MILLER was transported to the Leon County Detention Facility.

## CONCLUSION

15. Based upon the aforementioned facts, I submit that there is probable cause to believe that between April 10, 2025, and April 12, 2025, MILLER did commit the offenses of coercion and enticement of an individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity, in violation of Title 18, United States Code, Sections 2422(b).

COLIN MAHONEY
Special Agent
Homeland Security Investigations

Subscribed and sworn before me this 14th day of April, 2025.

_____
MARTIN A. FITZPATRICK
United States Magistrate Judge